# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel Amadeo Pesce, Ph.D.<br><br>Relator,<br><br>v.<br><br>Millennium Health; and Does 1-25,<br><br>Defendants. | CASE No.<br><br>FILED IN CAMERA AND UNDER SEAL<br><br>COMPLAINT FOR VIOLATION OF FEDERAL FALSE CLAIMS ACT |

COME NOW THE RELATOR, AMADEO PESCE, PhD., WHO ALLEGES AS FOLLOWS:

### Jurisdiction, Venue and Procedural Prerequisites

1. This is an action to recover damages and civil penalties on behalf of the United States of America arising out of false claims presented by defendant to the Department of Defense. The action arises under the provisions of the False Claims Act, 31 U.S.C. '3729, *et. seq.*, and the Social Security Act.

2. Section 3729(a) of the Act provides in relevant part that "Any action under section 3730 may be brought in any judicial district in which any Defendant may be found to reside, or transact business, or in any district in which any proscribed act has occurred." Defendant transacts business within this judicial district. Additionally, some of the acts complained of herein occurred within this judicial district.

1

3. Under the Act, this Complaint is to be filed *in camera* and remain under seal for a period of at least sixty (60) days and shall not be served upon the Defendant until the Court so orders. The Government may elect to intervene and proceed with the action within sixty (60) days after it receives both the Complaint and the material evidence and information.

4. As required under the Act, Relator has furnished to the Attorney General of the United States and to the United States Attorney for the District of Massachusetts, simultaneous with or prior to the filing of this Complaint, a statement of all material evidence and information related to the Complaint. This disclosure statement supports the existence of inflated billings under a government contract and the subsequent contract modifications. Additionally, prior to the filing of this Complaint the Relators has furnished to the Department of Justice a similar statement

### Parties to the Action

5. Relator Amadeo Pesce, Ph.D. is a citizen of the United States and resident of the State of California and brings this action on behalf of the United States of America. Dr. Pesce holds a B.S. degree in Biology from MIT and a Ph.D. in Biochemistry from Brandeis University. He completed a three-year postdoctoral fellowship in biochemistry and biophysics at the University of Illinois. He has numerous academic publications and was a full Professor at the University of Cincinnati. He has decades of experience running clinical laboratories.

6. Dr, Pesce was hired as Clinical Director of Millennium Laboratories in December in 2007 and served in that position until he was fired in August, 2014 as a result of his opposition to the practices described herein.

//

//

7. Defendant Millennium Health, Inc.,, is a California Corporation with its principal place of business in San Diego, California. It had previously done business as Millennium Laboratories, but changed its name to Millennium Health in September of 2014.

8. Millennium has a nationwide business conducting drug testing on urine samples, and does business in the District of Massachusetts.

9. At all times herein mentioned, each of the Defendants was an agent, servant or employee of each of the remaining Defendants, and was at all times acting within the purpose or scope of said agency or employment, and was acting with the express or implied knowledge, permission or consent of the remaining Defendants, and each of them.

## FACTUAL ALLEGATIONS PERTAINING TO ALL CAUSES OF ACTION

10. Millennium's primary business involves drug testing. The process essentially works like this. First, the patient urinates into a cup. The cup is then bar-coded and a plastic pipette is used to suck a three milliliter sample into a test tube which bears the same bar code as the cup for tracking purposes. The filled test tubes are placed in racks which are then placed into an automatic pipetting machine. The pipetting machine extracts a specific, known amount from each test tube (25 micro liters). These measured amounts are called aliquots. The test tube for each patient is used to prepare four aliquots per patient. These four aliquots are run on four separate plates which test for different drug panels. The aliquots are placed into a plate containing 96 reaction wells. Sixteen of the reaction wells are control samples and calibration samples. The remaining 80 wells contain the urine of actual

3

patients. Each plate of 96 aliquots goes into a mass spectrometer which processes the material. The processing leads to a computer generated report containing the results.

11.     Millennium has approximately two hundred mass spectrometers, running ten thousand samples a day, or 50,000 per week, or 2.6 million per year. Relator estimates that 30-40% of the tests are for Medicare beneficiaries.

12.     Of these 780,000-1,040,000 tests for Medicare beneficiaries, there is a known error rate of between 2-4%, or as many as 41,600 tests per year. Worse yet, although Millennium has it within its power to determine *which* of the tests are defective, it has refused to do so, rendering all of the tests effectively worthless.

13.     The source of the defective tests is the Hamilton pipetting machine that is used to fill the plates with aliquots. Although a successful test depends upon a precisely measured amount of material being inserted, in 1-2% of the tests either no (or almost no) material is inserted or far too much material is inserted. Either error leads to a defective test.

14.     Although this is the largest single source of pipette-related errors, it is by no means the only one. A July, 2014 report on studies by Asset Optimization Partners, an independent consulting firm, revealed additional pipetting errors occurring with as great or greater frequency, leading to a failure rate of between 2% and 4%.

15.     Millennium first suspected there was a problem in mid-2012 because physicians were calling to request that samples be retested because tests were reporting negative results for patients who were known to be taking prescription drugs which should have yielded positive results on the tests.

4

//

//

//

16. Millennium received approximately 14-15,000 complaints about drug testing per year. Complaints would be recorded on a Laboratory Occurrence Management (LOM) form and the records were maintained by Joyce Nickley in Clinical Operations. These physician complaints went to Millennium's Clinical Support Group.

17. Millennium searched for the cause of the defective tests for over a year before realizing that it was probably the Hamilton pipetting system. Once Millennium identified the probable cause, it conducted a failure mode evaluation which established Hamilton as one of the major risks for the company. The evaluation was conducted by Asset Optimization Partners, a consulting group, which Millennium contracted with for this purpose.

18. Although Hamilton steadfastly denied that there was a problem, Millennium ultimately learned that Hamilton made and sold a software program called TADM (Total Aspiration and Dispense Monitoring) which, when installed, would let Millennium know what the actual error rate was, and would also identify which of the well plates in a set gave defective readings because of pipetting errors. If implemented, this would have cut in half the errors which could not be attributed to specific patient samples.

19. In January, 2014 Millennium finally got the TADM software operational on one machine and was able to quantify the rate of defective testing as between .01 and .02. By contrast, normal laboratory error rates might be .0001.

5

20. A Hamilton pipetting machine with a TADM license costs $275,000.. TADM was installed on only one of the eleven pipetting machines. Although TADM enabled Millennium to track the pipetting insertions and identify the worthless tests, Millennium rejected Relator's urging to purchase and install the software on the remaining ten pipetting machines.

21. In addition to the $2.5 million cost for installation, running TADM significantly increases the processing time for urine samples, so using it would effectively double Millennium's turnaround time from one day to two. Installing the TADMs was therefore rejected as both too costly and contrary to Millennium's marketing strategy.

22. Millennium has presented hundreds of thousands of claims to Medicare for testing which it knew to be worthless.

23. Relator is informed and believes and based thereon alleges that despite Millennium's knowledge that is has been billing Medicare (and being paid) for services which were essentially worthless, Millennium has taken no steps to repay Medicare.

## COUNT I

## SUBMISSION OF FALSE CLAIMS

24. Relator repeats and repleads each of the allegations set forth in Paragraphs 1 through 23 inclusive as though fully set forth herein.

25. Millennium knew that 2-4% of the tests performed on Medicare patients were inaccurate but billed Medicare for all of them anyway. Millennium knows that under its current testing regimen, it cannot identify which of the tests are defective, rendering all of them essentially worthless. Despite this, Millennium has refused to take steps within its control which would reduce the rate of

unidentified defective tests by fifty percent.

26. In doing the things hereinabove alleged, defendants, and each of them knowingly presented or caused to be presented false or fraudulent claims for payment or approval to the United States.

27. By virtue of the false or fraudulent claims made by the defendant, the United States suffered damages and therefore is entitled to multiple damages under the False Claims Act, plus a civil penalty for each violation.

## COUNT II

### Failure to Repay Overpayments

28. Relator repeats and repleads each of the allegation set forth in Paragraphs 1 through 25 of this Complaint as though fully set forth herein.

29. Since March 10, 2010, 42 U.S.C. §1320a-7k(d) has required that a person or entity receiving an overpayment must, within 60 days of identifying the overpayment, report and return the money and notify Medicare of the reason for the overpayment. The 2010 amendments to the Medicare Act specifically made the failure to report and return overpayments enforceable under the False Claims Act [31 U.S.C. §3729(b)(3) and applies the same broad definitions of "knowing" and "knowingly" as the FCA. [§1128J, as added, March 23, 2010 by P.L. 111-148, Title VI, Subtitle E, §6402(a), 124 Stat. 753.)

30. An overpayment is a payment by a federal entity to a provider or supplier in excess of that which was due and payable. An overpayment may include payment for items or services

that are worthless, or are not reasonable and necessary because lack sufficient value in accordance with the Medicare rules. An overpayment may be received through an innocent billing error or through the mistake of a contractor.

31. As of May 24, 2010, the effective day of the legislation that established 42 U.S.C. §1320a-7k(d)(1), each day that a provider retains an overpayment, it is violating the False Claims Act.

32. Defendants, and each of them have known that Millennium had received overpayments under Medicare. They have known this because, Relator, *inter alia*, had brought to their attention the problems enumerated in the First Cause of Action.

33. Despite this knowledge, Defendants, and each of them have retained these overpayments. Defendants have refused to apply tests which, Relator in informed and believes, would have allowed them to identify worthless tests even some months after the tests had been performed and erroneous results reported.

34. Defendants' refusal to calculate or estimate the amount of overpayment refunds owed and make the repayments and disclosures to Medicare is a separate violation of the False Claims Act, 31 U.S.C. §3729(b)(3)

## PRAYER FOR RELIEF

WHEREFORE, Relator respectfully prays that:

1. Judgement be ordered against the Defendants in an amount equal to three times the damages sustained by the United States as a result of Defendants' conduct;

2. A civil penalty be assessed of not less than five thousand, five hundred

dollars ($5,500.00) and not more than eleven thousand dollars ($11,000.00) for each violation of 31 U.S.C. §3729;

3. That Relator be rewarded the maximum amount allowed pursuant to 31 U.S.C. §3730(d);

4. Attorneys' fees and costs of litigation according to proof; and

5. Such other and further relief as the Court may deem just.

DATED: March 12, 2015

        LAW OFFICES OF MARK ALLEN KLEIMAN

        By: _____
        MARK ALLEN KLEIMAN
        California State Bar No. 115959
        2907 Stanford Avenue
        Venice, CA 90292
        310 306-8094 / 310 306-8491 (fax)

DATED: March 12, 2015    NEYLON & O'BRIAN, P.A.

        By: _____
        John G. Neylon
        BBO #371020
        101 Tremont Street, Suite 504
        Boston, MA 02108
        617 542-9091/ 617 542-8722(fax)

        ATTORNEYS FOR RELATOR

## DEMAND FOR JURY TRIAL

Relators hereby demand a jury trial.

DATED: March ⟨⟩, 2015

        LAW OFFICES OF MARK ALLEN KLEIMAN

        By: _/s/ Mark K._____
        MARK ALLEN KLEIMAN
        California State Bar No. 115959
        2907 Stanford Avenue
        Venice, CA  90292
        310 306-8094 / 310 306-8491 (fax)

DATED: March ⟨⟩, ⟨⟩, 2015    NEYLON & O'BRIAN, P.A.

        By: _/s/ JGN_____
        John G. Neylon
        BBO #371020
        101 Tremont Street, Suite 504
        Boston, MA 02108
        617 542-9091/ 617 542-8722 (fax)

        ATTORNEYS FOR RELATOR

## CERTIFICATION OF SERVICE

The undersigned certifies that on March 12, 2015, a copy of the foregoing COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT AND DISCLOSURE STATEMENT were sent via a reliable source of overnight mail delivery addressed to:

Hon. Eric Holder
United States Attorney General
U.S. Department of Justice
10th & Constitution Ave, N.W.
Washington, D.C. 20530

Susan Winkler, Esq.
Deputy Chief, Health Care Fraud Unit
United States Attorney's Office
John Joseph Moakley Courthouse
Suite 9200
Boston, Massachusetts 02210

_____
Mark Allen Kleiman, Esq.

## PROOF OF SERVICE

STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF LOS ANGELES  )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 2907 Stanford Avenue, Venice, CA 90292.

On March 12, 2015, I served the foregoing document described as: **CIVIL COVER SHEET AND CATEGORY FORM** in this action by placing a true copy thereof enclosed in a sealed envelope **Certified Mail/Return Receipt Requested**, first class, postage prepaid, addressed as follows:

| | |
|---|---|
| Eric Holder, Esq. | Susan Winkler, Esq. |
| Attorney General of the United States | Deputy Chief, Health Care Fraud Unit |
| Office of the Attorney General, Civil Division | United States Attorney's Office |
| U.S. Department of Justice | John Joseph Moakley Courthouse |
| 950 Pennsylvania Avenue, NW | Suite 9200 |
| Washington, DC 20530-0001 | One Courthouse Way |
| | Boston, Massachusetts 02210 |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct and that this declaration was executed on March __, 2015 at Venice, California.

Franc Verdin

1